K.C. MAXWELL (SBN 214701)
LAW OFFICE OF K.C. MAXWELL
235 Montgomery Street
Suite 1070
San Francisco, CA 94104
P: 415-322-8817
F: 415-888-2372
kcm@kcmaxlaw.com

*Attorney for Defendant*
ALEXANDER IZAGUIRRE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDER IZAGUIRRE,<br><br>Defendant. | Case No.: CR 11-0867 WHA<br><br>NOTICE OF MOTION AND MOTION FOR JUDICIAL RECUSAL UNDER 28 U.S.C. §§ 144 AND 455, AND THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT<br><br>Date:   March 13, 2012<br>Time:  2:00 P.M.<br>Place:  Courtroom 8, 19th Floor |

PLEASE TAKE NOTICE THAT on March 13, 2012, before the Honorable William Alsup, in Courtroom 8, of the United States District Court for the Northern District of California, Defendant Alexander Izaguirre, by and through counsel, will and hereby does move for judicial recusal pursuant to 28 U.S.C. §§ 144 and 455, and the Due Process Clause of the Fifth Amendment.  This motion is based on this Notice of Motion and Motion, on the Memorandum filed concurrently with this motion, on the accompanying affidavit of K.C. Maxwell, all pleadings and papers on file in this action, and on the oral argument (if any) at the hearing on the motion.

Dated:  February 14, 2012                              /s/                                                              
                                                                        K.C. Maxwell
                                                                        *Attorney for ALEXANDER IZAGUIRRE*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Federal law mandates recusal by a district court judge who has a "personal bias or prejudice" against a party or whose "impartiality might reasonably be questioned."  28 U.S.C. §§ 144, 455. Under § 455(a), the mere appearance of partiality requires recusal, even where the judge harbors no actual bias or prejudice.  *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991).  Due process also requires recusal when a judge has prejudged a defendant's guilt, or where the judge has acted as part of the accusatory process.  *Hurles v. Ryan*, 650 F.3d 1301, 1319 (9th Cir. 2011); *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007).

Defendant Alexander Izaguirre moves to recuse the Honorable William Alsup based on statements he made showing that Judge Alsup has prejudged Mr. Izaguirre's guilt on the instant charge of perjury before the government indicted Mr. Izaguirre.  Referring to Mr. Izaguirre as a liar and perjurer, Judge Alsup sharply criticized the government in open court for its "disturbing" decision not to indict Mr. Izaguirre.  Judge Alsup then issued a written Order repeatedly referring to Mr. Izaguirre as a "perjurer" and unequivocally stating that Mr. Izaguirre was guilty of perjury beyond doubt.  Judge Alsup then ordered the Clerk of the Court to serve the order upon the United States Attorney for this district, Attorney Melinda Haag.  The government indicted Mr. Izaguirre nine days later, more than two years after the allegedly perjurious testimony.

Judge Alsup's statements and actions have created a clear appearance of partiality against Mr. Izaguirre.  There is also strong evidence of actual bias and prejudice.  Accordingly, Mr. Izaguirre asks for Judge Alsup to be recused and for this matter to be returned to the courtroom of the Honorable Maxine M. Chesney, the jurist who drew this proceeding by the wheel.

//

//

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Events Preceding The Indictment Against Mr. Izaguirre

The government has charged Mr. Izaguirre with perjury, in violation of 18 U.S.C. § 1621, based upon his September 2009 testimony to a grand jury investigating the activities of MS-13. Mr. Izaguirre is not a member of MS-13, and the government does not allege that he is.  While Mr. Izaguirre was in custody for unrelated state charges, he was housed with two MS-13 members, Wilson Villalta and Luis Herrera.  Mr. Izaguirre testified regarding a recent homicide near the Daly City BART station involving Herrera, Villalta and another MS-13 member, Danilo Velasquez.

In September 2009, the government indicted Herrera and Velasquez for racketeering conspiracy, conspiracy to commit murder in aid of racketeering, and other charges relating to their involvement with MS-13.  Villalta cooperated with the government, and testified against Velasquez and Herrera at trial.

The government does not dispute the substance of Mr. Izaguirre's testimony to the grand jury; rather, it challenges the source of the information to which he testified.  In October 2009, shortly after the government indicted Velasquez and Herrera, Villalta recanted his earlier statements and told the government that Mr. Izaguirre's knowledge of the shooting arose from what Villalta had relayed to him.

Eighteen months later, in April 2011, the government deported Mr. Izaguirre to Honduras. The assistant U.S. attorneys prosecuting the MS-13 defendants made no attempt to prevent or postpone his deportation.  Affidavit of K.C. Maxwell (Maxwell Aff. ), Ex. B.  In August 2011, Mr. Izaguirre was detained in the Northern District of Arizona for re-entering the country.

---

[1] Unless otherwise indicated, the facts and procedural background set forth in this section are based on papers and exhibits by filed by the government and Velasquez in related proceeding *United States v. Velasquez*, 08-CR-730 WHA, Dkt. Nos. 5377, 5346, 5369, and 5370.  Should the Court require additional hard copies, counsel will provide them immediately upon request.

The government filed the indictment against Mr. Izaguirre on November 30, 2011, more than two years after his testimony to the grand jury.

**B. Velasquez's Motion To Dismiss The Indictment Against Him**

Velasquez and Herrera proceeded to trial in October 2011, before the government indicted Mr. Izaguirre.  Shortly before the commencement of trial, the government informed Herrera that Villalta had made statements contradicting Mr. Izaguirre's grand jury testimony.  Velasquez moved to dismiss the indictment, arguing that it was tainted by the presentation of Mr. Izaguirre's allegedly false testimony to the grand jury.[2]  Velasquez argued that the government deported Mr. Izaguirre because the prosecutors believed he had perjured himself before the grand jury.  Counsel for Velasquez also contemplated calling Mr. Izaguirre as a witness to impeach Villalta,[3] and orally argued for a grant of immunity requiring Mr. Izaguirre to testify.

On November 16, Judge Alsup heard argument concerning Velasquez's request for a grant of immunity for Mr. Izaguirre.  The government stated that it would not voluntarily give Mr. Izaguirre immunity to testify because it was still considering whether to prosecute him for perjury.  Judge Alsup instructed the parties to brief the law regarding use immunity, as opposed to transactional immunity, telling the government, "You could still prosecute [Mr. Izaguirre]."  Maxwell Aff., Ex A.  After the hearing, and before the Court decided the immunity issue, Velasquez decided against calling Mr. Izaguirre to testify.

On November 17, Judge Alsup heard argument on Mr. Velaquez's motion to dismiss.  Assistant U.S. Attorney David Hall argued for the government.  In a colloquy with the government,

---

[2] *United States v. Velasquez*, 08-CR-730 WHA, Dkt. No. 5377.  Mr. Herrera also filed a motion to dismiss based on the same argument, but subsequently withdrew it.  Dkt. Nos. 5251, 5266.

[3] At trial, Mr. Villalta testified that Mr. Herrera did confess his involvement in the shooting to Mr. Villalta, but that Mr. Izaguirre was not present during the conversation.  Mr. Villalta stated that he enlisted Mr. Izaguirre to tell prosecutors he had witnessed Mr. Herrera's confession as part of Mr. Villalta's attempt to distance himself from the shooting.

3

Judge Alsup stated that he was "disturb[ed]" by the government's decision not to prosecute Mr.

Izaguirre, and referred to Mr. Izaguirre as a "liar and a perjury person:"

> JUDGE ALSUP:   All right, let me go directly to a different point the Government needs -- doesn't need to, but which disturbs me.  It looks like in October of '09 the prosecutors in this building knew that perjury had been committed and did not proceed against Villalta, in fact, let him go.
>
> MR. HALL:  You mean Izaguirre.
>
> JUDGE ALSUP:  I mean Izaguirre.
>
> MR. HALL:  Right.
>
> JUDGE ALSUP:  How did -- can that be?  How could you let -- plus, he might have been a material witness to a defendant in the case.  So -- maybe I got the facts wrong.
>
> MR. HALL:  I don't think the Court has the facts --
>
> JUDGE ALSUP:  It's hard for me to believe that the Government would let a liar and a perjury person go to escape out of the country or be deported when the defense lawyer might want to call him, just like it happened in the case.  So what do you say to that point?  You weren't in the case, neither one of you were in the case --
>
> MR. HALL:  I wasn't.
>
> JUDGE ALSUP:  But you are the ones I got here now.  So that disturbs me.

Maxwell Aff., Ex. B.  Judge Alsup further expressed his displeasure at the government's decision

not to indict Mr. Izaguirre, and Mr. Hall agreed that the government should have indicted Mr.

Izaguirre:

> JUDGE ALSUP:  I don't -- this doesn't have a good -- I'm not saying this warrants a dismissal, and I'm not saying it doesn't, but I just don't like the image of somebody lying to the Grand Jury, the prosecutor knowing that the lie occurred and not indicting the guy.  And I wonder if the reason he wasn't indicted was because it might jeopardize the rest of the case in some way.  It just doesn't look right to me, so I'm troubled by that aspect of this scenario.
>
> MR. HALL: I agree with the Court that it doesn't look right, that we should have, in 20/20 hindsight, done differently, as the Court suggests.

4

1   Maxwell Aff., Ex. C.  Judge Alsup then ordered the Marshals to keep Mr. Izaguirre in the Northern

2   District of California rather than sending him back to the Northern District of Arizona.  Judge

3   Alsup informed counsel for Mr. Izaguirre, "I do not want to issue any orders that would in some

4   way interfere with the ability to -- of the Government to carry out what justice would require here."

5   Maxwell Aff., Ex. D.

6

7   **C.  Judge Alsup's Written Order Denying The Velasquez Motion To Dismiss**

8           Following the hearing, Judge Alsup issued a written order denying the motion to dismiss on

9   the basis that the government had presented sufficient evidence to the grand jury, apart from Mr.

10  Izaguirre's testimony, to support the indictment of Velasquez.  Maxwell Aff., Ex. E.  Judge

11  Alsup's order repeatedly and unequivocally stated that Mr. Izaguirre had committed perjury.  In the

12  first sentence of the statement of facts, Judge Alsup stated, "There is no doubt that lies under oath

13  were told to the grand jury."  Maxwell Aff., Ex. E at 1.  The order then recounted Mr. Izaguirre's

14  testimony to the grand jury, repeatedly labeling the testimony "perjurious" and identifying Mr.

15  Izaguirre as a "perjurer" while highlighting the government's decision not to indict him:

16

17                  [M]r. Izaguirre was not detained for perjury and the prosecutors did not
                    notify defense counsel, the grand jury, or the Court of the perjury until
18                  October 2011. As no action was taken against Mr. Izaguirre for his perjury,
                    Mr. Izaguirre was deported in April 2011 — almost a year and a half after
19                  the perjury was discovered and six months before the instant trial.

20
    Ex. E at 3.
21

22                  Despite this perjurious testimony, as stated, Mr. Izaguirre was not
                    prosecuted, and was deported in April 2011.
23
    Ex. E at 3.
24

25                  The motion presents a troubling scenario of the presentation of perjured
                    testimony to the grand jury by a government witness and the lack of a
26                  curative response. Worse, once the perjury was discovered, the government
                    deported the perjurer and, for a time, he was out of defense subpoena range.
27
    Ex. E at 4.
28

---

> Here, the same agency that investigated the case and that has been working side-by-side with the prosecutors deported the perjurer. ICE agents (who have been sitting at counsel table in the instant trial and during the previous April 2011 trial) and a government prosecutor was informed over two years ago that Mr. Izaguirre's testimony was perjurious at least in some respects (Velasquez Exh. F). Despite this, the government took no action against Mr. Izaguirre prior to his deportation.

Ex. E at 4. In all, the order labeled Mr. Izaguirre a "perjurer" or referred to his testimony as "perjury" or "perjurious" some fifteen times.

Judge Alsup concluded the order by referring to the "troubling scenario" under which the government failed to investigate charges against Mr. Izaguirre, and instead deported him. Ex. E at 7. Judge Alsup then directed the Clerk of the Court to serve a copy of the order to United States Attorney Melinda Haag. The government indicted Mr. Izaguirre a mere nine days after Judge Alsup's order, but more than two years following the allegedly perjurious testimony.

## III.   ARGUMENT

Mr. Izaguirre bases this motion on both statutory and constitutional grounds. Because Judge Alsup's actions and statements have created the appearance of partiality, as well as showing actual bias or prejudice, recusal is required under 28 U.S.C. §§ 144, 455(a), and 455(b)(1). Recusal is also constitutionally required under the Due Process Clause of the Fifth Amendment, *In re Murchison*, 349 U.S. 133 (1955), and *Tumey v. State of Ohio*, 273 U.S. 510 (1927).

### A.   Statutory Grounds For Recusal

#### 1.   28 U.S.C. § 455(a) Requires Recusal Given The Appearance Of Partiality

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for judging the appearance of partiality under section 455(a) is objective. *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991). The court must ascertain "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir.

6

1983)).  Section 455(a) requires recusal where there is merely an appearance of partiality, whether or not there is actual bias.  *Id.* (citing *Herrington v. Sonoma County*, 834 F.2d 1488, 1502 (9th Cir. 1987)).

### 2.   28 U.S.C. § 455(b) Requires Recusal Where The Judge Harbors Bias Or Prejudice

Under section 455(b), a judge must recuse himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).  Section 455(b) requires recusal where actual bias or prejudice exists, even if there is no appearance of bias or prejudice.  *Herrington*, 834 F.2d at 1502.  Section 455(b) also covers situations that create apparent partiality, because it provides examples of situations in which a judge's 'impartiality might reasonably be questioned' under § 455(a).  *Id.* (citing *United States v. Conforte*, 624 F.2d 869, 880–81 (9th Cir. 1980), cert. denied, 449 U.S. 1012 (1980)).

### 3.   28 U.S.C. § 144 Requires Recusal Upon The Filing Of An Affidavit Sufficiently Alleging Bias Or Prejudice

Like section 455(b)(1), section 144 require recusal where the judge holds "personal bias or prejudice" towards a party.  Courts construe sections 144 and 455(b)(1) *in pari materia*; the test of the legal sufficiency of a motion for disqualification is the same under both statutes.  *United States v. Carignan*, 600 F.2d 762, 764 (9th Cir. 1979).  Decisions construing the phrase "personal bias or prejudice" in section 144 control decisions construing the same phrase in section 455(b)(1).  *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980).

Despite the identical language, the two sections are not redundant, but complementary. *Sibla*, 624 F.2d at 868.  Unlike section 455(b)(1), section 144 requires the moving party to file a timely affidavit sufficiently alleging personal bias or prejudice by the judge before whom the matter is pending.  28 U.S.C. § 144.  If the judge determines that the affidavit alleges facts stating grounds for recusal under section 144, the affidavit is sufficient, and the motion must be referred to

7

1  another judge for a determination of its merits.  *Sibla*, 624 F.2d at 867 (citing *United States v.*

2  *Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978), cert. denied, 440 U.S. 907 (1979)).

3          Taken together, sections 144 and 455 offer the moving party "two bites of the apple." *Sibla*,

4  624 F.2d at 868.  If, after considering all the circumstances, the judge declines to grant recusal

5  under sections 455(a) and (b)(1), the judge still must determine the sufficiency of the affidavit filed

6  under section 144.  *Sibla*, 624 F.2d at 868.  If the affidavit is sufficient on its face, the motion must

7  be referred to another judge for a determination of its merits.  *Id.*

8

9          **4.  Extrajudicial Source Doctrine**

10         As a general matter, to require recusal under sections 144 and 455, a judge's alleged

11 partiality, bias or prejudice must stem from facts or evidence learned by the judge outside the

12 course of judicial proceedings.  *See Liteky v. United States*, 510 U.S. 540 (1994) (discussing

13 "extrajudicial source doctrine").   Similarly, adverse rulings or unfavorable statements made by a

14 judge in the course of judicial proceedings generally do not constitute evidence sufficient to require

15 recusal, unless the statements or rulings are based on an extrajudicial source.  *Id.*; *Berger v. United*

16 *States*, 255 U.S. 22 (1921).

17         Courts, however, recognize limits on this doctrine where the evidence of partiality, bias, or

18 prejudice in purely-judicial conduct is "pervasive" or "so extreme as to display clear inability to

19 render fair judgment," *Liteky*, 510 U.S. at 551 (citing *Davis v. Bd. of Sch. Comm'rs of Mobile*

20 *County*, 517 F.2d 1044, 1051 (5th Cir. 1975)), or where a judge has "manifest[ed] a closed mind on

21 the merits of the case," *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).  *See United*

22 *States v. Womack*, 454 F.2d 1337, 1341 (5th Cir. 1972) (affidavit under section 144 was sufficient

23 where judge referred to defendant as person "who everybody admits was certainly a shady

24 character" and stated that defendant was guilty if codefendant was guilty).  Recusal may also be

25 required where a judge prejudges a case without sufficiently examining evidence or offering a

26

27

28

party the opportunity to be heard.  *See Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977).

**5.   Judge Alsup's Statements And Actions Show Bias And Prejudice, And Create The Appearance Of Partiality, Requiring Recusal Under Sections 144 and 455**

Judge Alsup's statements and actions require recusal for several reasons.  First, Judge Alsup unequivocally prejudged Mr. Izguirre to be guilty of perjury beyond doubt, even before the government indicted him.  In his written order denying Mr. Velaquez's motion to dismiss, Judge Alsup wrote "[t]here is no doubt that lies under oath were told to the grand jury."  Maxwell Aff., Ex. F at 1.  Continuing, the order labeled Mr. Izaguirre a "perjurer" twice, and identified his testimony as "perjury" or "perjurious" some thirteen times.  Judge Alsup's statements in open court also evidence his belief in Mr. Izaguirre's guilt.  Judge Alsup referred to Mr. Izaguirre as a "liar and perjury person" and stated that "prosecutors in this building knew that perjury had been committed."  Maxwell Aff., Ex. C.  Judge Alsup also repeatedly and harshly criticized the government's decision not to indict Mr. Izaguirre, a position that would only make sense if Judge Alsup firmly believed Mr. Izaguirre to be guilty.  Judge Alsup's statements show that he has "manifest[ed] a closed mind on the merits of the case," *Grinnell Corp.*, 384 U.S. at 583, and his prejudice regarding Mr. Izaguirre's guilt—even before Mr. Izaguirre has had the opportunity to present evidence on his behalf—requires Judge Alsup's recusal.  *See McGhie Land Title Co.*, 549 F.2d at 1361; *Womack*, 454 F.2d at 1341.

Second, Judge Alsup's statements show that he harbors a personal bias towards Mr. Izaguirre.  Judge Alsup referred to Mr. Izaguirre as a "liar and a perjury person" in open court, and stated that he was disturbed that the government had allowed him to "escape out of the country…" Maxwell Aff., Ex. C.  Twice in his written order, Judge Alsup directly labeled Mr. Izaguirre a "perjurer."  Maxwell Aff., Ex. F at 4.  These statements evidence Judge Alsup's personal bias towards Mr. Izaguirre, and require his recusal under sections 144 and 455.  *See Womack*, 454 F.2d

at 1341 (recusal required where judge stated defendant was man "who everyone admits was certainly a shady character" and was working with codefendant "hand in glove").

Even if Judge Alsup held no actual bias towards Mr. Izaguirre, these statements—together with Judge Alsup's statements to the government urging, if not directing, his indictment—clearly create the appearance of bias or prejudice. Under section 455(a), the mere appearance of bias or prejudice requires Judge Alsup's recusal. *Preston*, 923 F.2d at 734. Further, undersigned counsel has submitted an affidavit under section 144 setting forth specific facts sufficient to allege personal bias or prejudice by Judge Alsup. *See generally* Maxwell Aff. Accordingly, this motion must be referred to another judge for a determination on the merits. *Sibla*, 624 F.2d at 868.

While Judge Alsup's statements were made in the course of judicial proceedings, the pervasiveness and extreme degree of partiality evident in his statements show that he has manifested a closed mind on the merits, and hence an "inability to render fair judgment." *See Liteky*, 510 U.S. at 551; *Grinnell Corp.*, 384 U.S. at 583; *Davis*, 517 F.2d at 1051. Recusal is therefore required notwithstanding the extrajudicial source doctrine.

**B. Constitutional Grounds For Recusal**

    **1. Due Process Requires Recusal Where A Judge Makes Statements Prejudging The Case Against A Defendant Or Acts As Part Of The Accusatory Process**

The Supreme Court has long recognized the due process right to an unbiased judge. *See Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927). To safeguard the right to a fair trial, due process requires judicial recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Hurles v. Ryan*, 650 F.3d 1301, 1309 (9th Cir. 2011) (quoting *Withrow v. Larkin*, 421 U.S. 35 (1975)). A claimant need not prove actual bias to make out a due process violation. *Hurles*, 650 F.3d at 1309 (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986); *Johnson v. Mississippi*, 403 U.S. 212, 215 (1971)). It is sufficient to show the appearance of or potential for bias. *Hurles*, 650 F.3d at 1309. "The inquiry

is an objective one; the court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2262 (2009).

In determining what constitutes a risk of bias that is "too high," no mechanical definition exists; cases requiring recusal "cannot be defined with precision" because "circumstances and relationships must be considered." *Hurles*, 650 F.3d at 1309 (quoting *Murchison*, 349 U.S. at 136). For example, due process requires recusal where "the judge's opinions were formed long before trial and before any evidence has been presented." *Id.* at 1319. Recusal is also required where the judge acts as "part of the accusatory process." *Crater*, 491 F.3d at 1131 (quoting *Murchison*, 349 U.S. at 137).

### 2. Due Process Requires Recusal Based On Judge Alsup's Pre-Formed Opinions And His Participation In The Accusatory Process

As demonstrated by the facts set forth above, Judge Alsup has clearly prejudged Mr. Izaguirre's guilt on the charge of perjury, even before the government indicted him. Judge Alsup's prejudice has created an unconstitutional potential for bias; due process therefore requires recusal. *See Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252 (2009). Even if Judge Alsup could suspend his prejudice for the course of the proceeding, his actions have created the appearance of partiality. Under the objective standard, the mere appearance of partiality is sufficient; an average judge in this position would be unlikely to be neutral. *See id.*

Due process also requires recusal because Judge Alsup, by urging the government to indict Mr. Izaguirre, has acted as "part of the accusatory process." *See Crater*, 491 F.3d at 1131 (quoting *Murchison*, 349 U.S. at 137). While the simple act of referring a party to the U.S. Attorney's Office does not by itself require recusal, *see United States v. Johnson*, 610 F.3d 1138, 1148 (9th Cir. 2010), Judge Alsup's interactions with the prosecutors amounted to far more than a referral to

the U.S. Attorney's Office.  First, Judge Alsup repeatedly stated to the prosecutors his unequivocal belief that Mr. Izaguirre was in fact guilty of perjury.  Maxwell Aff., Exs. C, D, F.  Second, Judge Alsup pointedly informed the prosecutor in open court that he was "disturb[ed]" and "troubled" by the prosecutors' decision not to indict Mr. Izaguirre because "it doesn't look right."  Maxwell Aff., Exs. C, D.  Third, Judge Alsup ordered that his written order—which repeatedly stated that Mr. Izaguirre was a perjurer guilty beyond any doubt and that the Office's decision not to prosecute him presented a "troubling scenario"—be served upon the U.S. Attorney.  Maxwell Aff., Ex. F at 7.  Through these actions, Judge Alsup sent a clear, unambiguous message: that Mr. Izaguirre was guilty beyond a doubt, and that the U.S. Attorney's Office should indict him, lest their lack of prosecution appear improper.  The U.S. Attorney's Office, indicting Mr. Izaguirre nine days later after more than two years had passed without any threat of prosecution, clearly received the message.  Judge Alsup was more than just involved in the accusatory process; in short, Judge Alsup's involvement and directives stand as the but-for cause of it.  In other words, Mr. Izaguirre would not have been indicted but for Judge Alsup's involvement in the accusatory process.

Having prejudged Mr. Izaguirre's guilt, and by participating in the accusatory process, the due process guarantee to Mr. Izaguirre precludes Judge Alsup from serving as the jurist to preside over this proceeding; the appearance of partiality, forbidden by the Fifth Amendment, compels recusal.[4]

//

//

//

//

---

[4] *See, e.g., United States v. McGowan*, No. 10-50284, 2012 U.S. App. LEXIS 1424, at 21 (9th Cir. Jan. 12, 2012) (remanding to a different judge for re-sentencing, "because [the district court judge] would likely have 'substantial difficulty in putting out of his . . . mind previously held views' that the defendant's conduct was "unforgiveable").

IV.     **CONCLUSION**

For the reasons set forth above, statutory and constitutional law requires that Judge Alsup be recused from this proceeding.  Mr. Izaguirre respectfully requests that this motion be assigned to another judge for a determination on the merits, and that his motion for recusal be granted.

Dated:  February 14, 2012                    /s/_____

K.C. Maxwell
*Attorney for ALEXANDER IZAGUIRRE*